1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

United States of America,

          Plaintiffs,

    v.

ALAN ANDERSON,

          Defendants.

Case No.  21-cr-00397-EMC

**PRETRIAL CONFERENCE ORDER**

## I.   TRIAL DATE & LENGTH OF TRIAL

A second pretrial conference shall take place on January 12, 2024.  Counsel shall be present in Courtroom 5, on the 17th floor, at 9:00 a.m.  The Court and parties will screen prospective jurors for those who, based on questionnaires, can be excused without coming in for voir dire on January 16.  The Court will also address other pending pretrial disputes if any.

Jury selection shall take place on January 16, 2024.  Counsel shall be present in the Courtroom at 8:00 a.m.  Parties shall be prepared to make opening statements that day if time permits.

The jury trial shall begin on January 16, 2024.  The trial days are: January 16, 17, 19, 22, 23, 29, 30, and 31.  (Thursdays are dark.)  Trial shall last from 8:30 a.m. to 1:30 p.m. on each day.  On all trial days counsel shall be present in the Courtroom at 8:00 a.m. to discuss any matters requiring resolution prior to commencement of trial at 8:30 a.m.

The length of the trial is expected to last not more than seven court days.  The parties will endeavor to abide by this estimate.

## II.   TRIAL PROCEDURES

Given the number of witnesses and exhibits, the Court imposes additional trial procedures.

A party must give the opposing party at least forty-eight (48) hours' notice of witnesses it intends to call, exhibits it intends to use, and/or demonstratives it intends to use.  Saturdays, Sundays, and holidays do not count.  Thus, *e.g.*, for a Monday trial day that starts at 8:00 a.m., a party must give the opposing party notice by 8:00 a.m. on Thursday.

If the opposing party has an objection, then it must notify the party by 6:00 p.m. the same day of notice, and the parties shall meet and confer to see if they can resolve their differences.  If they cannot, then they shall **file** with the Court a joint statement twenty-four (24) hours in advance of the relevant trial day.  In short, the Court requires a full day advance notice to resolve any objections.

### III.      WITNESSES

### I.       U.S. WITNESS LIST

The government has identified the following individuals as witnesses it may call in its case-in-chief.  *See* Docket No. 47. (U.S. Witness List).

1.  George Symons
2.  Thomas Whalen
3.  Peggy Whalen
4.  William "Clark" Colvis
5.  Samit Channa
6.  Dipak Patel
7.  Richard Petzold
8.  Randall Renfro
9.  Moe Delfani
10. Sibhan Delfani
11. Rodney Maher
12. Anil Patel
13. Jack Dilley
14. Nancy Eagle
15. Ming Cheung

United States District Court
Northern District of California

16. George Malasek

17. Representative of Google, LLC

18. Custodian of Records/Representative from California Secretary of State

19. Federal Bureau of Investigation (FBI) Special Agent Meredith Williams

20. FBI Special Agent Steven Coffin

21. FBI Forensic Accountant Kristoffer Pascual

22. Information Technology Employee at Google

23. Information Technology Employee at Yahoo, Inc.

24. Information Technology Employee at Wells Fargo & Co.

25. Custodian of Records/Representative from Bank of America, Corp.

26. Custodian of Records/Representative from Bank of America Merrill Lynch

27. Custodian of Records/Representative from BBVA, S.A.

28. Custodian of Records/Representative from Wells Fargo & Co.

29. Custodian of Records/Representative from Capital One Financial Corp.

## II.      MR. ANDERSON'S WITNESS LIST

Mr. Anderson has identified the following individuals as witnesses he may call in his case-in-chief.  *See* Docket No. 49 (Anderson Witness List).

1.   Alan Anderson

2.   Fredrick Anderson

## IV.     MOTIONS IN LIMINE AND RELATED MOTIONS

## I.      U.S. MOTIONS IN LIMINE (DOCKET NO. 48)

1.   MIL No. 1

In the first motion in limine, the government moves for a ruling that the defendant should be precluded from offering an improper defense of blaming his victims based on several theories.

First, the government seeks to preclude the defense from arguing that the victims should have exercised more diligence or skepticism in their dealings with him because it is no defense that the victims of the fraud was gullible or negligent.  Mr. Anderson states he does not intend to use this defense.  Indeed, it is improper for the defense to argue that the alleged victims should

have exercised more diligence.  In a mail fraud case, "what is important is the intent of the person making the statement that it be in furtherance of some fraudulent purpose"; "a misrepresentation may be material without inducing any actual reliance."  *United States v. Blixt*, 548 F.3d 882, 889 (9th Cir. 2008) (quoting *United States v. Halbert*, 640 F.2d 1000, 1009 (9th Cir. 1981).  "In this circuit, 'it is immaterial whether only the most gullible would have been deceived' by the defendants' scheme."  *United States v. Ciccone*, 219 F.3d 1078, 1083 (9th Cir. 2000) (quoting *Lemon v. United States*, 278 F.2d 269, 272 (9th Cir. 1960).

Second, the government seeks to preclude the defendant from arguing as a defense that Mr. Anderson was not lying, but instead was merely using puffery in his dealings to generate attention in conformity with typical Silicon Valley startup culture.  The government asserts that this type of argument is akin to an "other people did it too" defense, which is no defense to wire or securities fraud and would be unduly prejudicial and irrelevant.  The defense asserts that they do not intend to argue that the government is selectively prosecuting this case amongst the variety of Silicon Valley CEOs using puffery to gain investors' pocketbooks.  The government is correct that it would be prejudicial and irrelevant for the defense to suggest that Mr. Anderson should be acquitted because other CEOs in Silicon Valley are lying to investors.  FRE 401, 403.

Finally, the government argues that the defense should be precluded from offering a defense that Mr. Anderson's victims did not in fact rely on Mr. Anderson's statements.  One of the elements of wire fraud is that "the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing a person to part with money or property …"  9th Cir. Model Instruction No. 15.35.  To satisfy this element, the government must prove that the materiality of the false statement, meaning that the statement had "a natural tendency to influence, or is capable of influencing, the decision of the decision making body to which it was addressed."  *Neder v. United States*, 527 U.S. 1, 16 (1999) (quoting *United States v. Guadin*, 515 U.S. 506, 509 (1995).).  The government argues that though materiality is an element of the wire fraud offense, "the government does not have to prove actual reliance upon the defendant's misrepresentations."  U.S. MIL at 8.

Materiality measures the intent of the defendant and natural capacity to influence a

4

reasonable investor; it does not measure whether the statement made actually influences the investors' decision making. *United States v. Lindsey*, 850 F.3d 1009, 1017 (9th Cir. 2017). The element of materiality is "an objective test." *Id*. at 1014. The jury must decide whether the statement has the "propensity or capacity to influence or affect [a lender's] decision." *Id*. (quoting *United States v. Rodriguez-Rodriguez*, 840 F.2d 697, 700 (9th Cir. 1988).). Even if the particular lenders in question were negligent or acted with intentional disregard, that is no excuse if the defendant proffered objectively fraudulent statements or omissions which were material. *Id*. at 1014. The government is not required to prove that the investors actually relied upon Mr. Anderson's representations.

For the reasons stated above, the motion is therefore GRANTED.

DEFENDANT'S MIL No. 3

In the third motion in limine, Mr. Anderson asks the Court to preclude introduction of any evidence related to any civil cases involving Mr. Anderson's companies. Anderson MIL at 11. The government seeks to admit testimony that investors relied on Mr. Anderson's misrepresentations and omissions and forestalled civil suits in reliance on Mr. Anderson's misrepresentations about impending deals that would result in a return on their investments. U.S. Opp'n at 10. The investors will testify that they would have acted sooner to recoup their money but for Anderson's continued misrepresentations and omissions. *Id*.

As previously sated, materiality is an objective test which does not account for actual reliance. However, why an investor chose to invest with Mr. Anderson may be probative to show what a reasonable investor would have done in the same circumstances. For Mr. Anderson to be convicted of wire fraud, the government must show that the "statements made or facts omitted as part of the scheme were material … [because] they had a natural tendency to influence, or were capable of influencing a person to part with money or property." 9th Cir. Model Crim. Jury Instr. 15.35. The materiality element does not require that *these* investors were influenced to part with their money; their subjective intent is not required here. However, the government may construct the composition of a reasonable investor by showing what specific investors did as they represent a slice of the market. The materiality of Mr. Anderson's misrepresentations and omissions may be

1   informed circumstantially by how these actual investors reacted or stalled their action.

2       In this case, the indictment alleges a "continuing" scheme beginning in 2010 and

3   continuing through 2019.  Indictment, 4.  Thus, Mr. Anderson's continuous misrepresentations

4   and omissions about how investors will receive a return on their investment is relevant.  Although

5   investors allegedly became weary of Mr. Anderson, they forestalled filing civil actions because

6   they continued to be misled by Mr. Anderson's clever responses.  At the same time, the

7   government may not show evidence of the outcome of the civil proceedings or any other evidence

8   related to the civil proceedings.  They may only ask investors to testify to their decision to seek a

9   civil suit and their experience in being stalled by Mr. Anderson's representations.

10      For the reasons stated above, the defense's motion is therefore GRANTED in part and

11  DENIED in part.  The government may not introduce evidence of outcomes of any of the civil

12  suits filed against Mr. Anderson.  However, the government may ask investors to testify about

13  delaying suits against Mr. Anderson based on continued misrepresentations and omissions.

14      <u>DEFENDANT's MIL No. 13</u>

15      In the defense's thirteenth motion in limine, Mr. Anderson asks the court to prevent the

16  government from introducing evidence as to the financial hardship endured by any witnesses from

17  the charged offenses.

18      As previously discussed, the government may construct the composition of a reasonable

19  investor by showing what specific investors did as they represent a slice of the market.  The

20  materiality of Mr. Anderson's misrepresentations and omissions may be informed by how these

21  investors reacted.

22      Here, if an investment was significant to an investor, that fact may shed light on the

23  materiality of Mr. Anderson's statements.  The government suggests they will ask witnesses

24  questions like: "Was this a significant investment for you?"  "Did you take a line of equity on your

25  house for this?"  Such questions may indicate to the jury that the investors made significant,

26  meaningful investments, and did not take their decisions likely, facts which may be probative of

27  the materiality of Mr. Anderson's statements.

28      The government may not, however, elicit sympathetic tales from the defendants about the

United States District Court
Northern District of California

1   consequences of their loss.  For example, the government may not elicit testimony about how an

2   investor lost their retirement savings and had to come out of retirement to get a second job.  This

3   type of testimony is barred by FRE 403 because it is unduly prejudicial in eliciting the jury's

4   sympathy and it does not provide probative value because an investor's consequences does not

5   bear on whether Mr. Anderson's statements or omissions were material.

6          For the reasons stated above, the defense's motion is therefore GRANTED in part and

7   DENIED in part.  The government may ask investors to testify regarding how significant the

8   investment was for them, but the government may not ask investors about the personal

9   consequences of their failed investments.

10         DEFENDANT'S MIL NO. 14

11         In the fourteenth motion in limine, Mr. Anderson asks the court to preclude the

12  government agents or government agent witnesses from characterizing the investors as "victims"

13  in front of the jury.  However, the defense concedes that the investors may refer to themselves and

14  other investors as victims if they so choose.  Further, the government may use the term "victims"

15  in their closing argument, but they may not use it in their opening argument or any other time

16  during the trial.

17         The government shall not call the investors "victims" from the outset of the case (e.g. in

18  opening arguments), because that would unduly imply guilt contrary to the presumption of

19  innocence.  In *United States v. Sena*, a district court held that, at an upcoming trial, "the jury has

20  the responsibility of deciding whether a crime occurred and whether that crime resulted in harm to

21  [the alleged victim.]  Thus, to label [the alleged victim] as a victim at the outset of trial carries the

22  risk of improperly influencing the jury's decision."  2021 WL 4129247 *2 (D.N.M. 2021).

23         Nonetheless, it is permissible for the government's investor witnesses to refer to

24  themselves and other investors as "victims."  They may characterize their own testimony however

25  they see fit.  Additionally, once the government has reached its closing, and has purportedly

26  established that the investors were in fact victims, it is fair for it to use the term to substantiate

27  their argument, so long as the investors are not "label[ed] as victim[s] at the outset of trial."  *Id*.

28         Taking into account the above, the defense's motion is GRANTED in part and DENIED in

7

United States District Court
Northern District of California

part.  Government agent witnesses may not use the term "victims."  The prosecutors may not use the term "victims" before their closing argument.  However, investors may refer to themselves and other investors as victims if they so choose.

2.  <u>MIL No. 2</u>

In the second motion in limine, the government moves to exclude "any reference by the defense to Anderson's alleged suffering or potential punishment during any phase of the trial." U.S. Mot. at 10.  The government asserts that this prohibition should extend to even more subtle references such as "the Defendant is facing a lot of time" or "the Defendant's liberty is at stake in this trial."  Mr. Anderson does not oppose this motion.  He says he "does not intend to introduce testimony regarding these factors for purely sympathetic reasons and would only seek admission if the information is relevant to the facts of the case."  Anderson Opp'n at 3.

The Court notes that the jury will be instructed at the close of the case as follows: "The punishment provided by law for this crime is for the court to decide.  You may not consider punishment in deciding whether the government has proved its case against the defendant beyond a reasonable doubt."  9th Cir. Model Instruction No. 6.22.  The parties have stipulated to this instruction.

Taking into account the above, the motion is GRANTED.

3.  <u>MIL No. 3</u>

In the third motion in limine, the government argues that Mr. Anderson should be barred from presenting evidence that he acted in "good faith."  U.S. Mot. at 3.  The government uses "good faith" to mean that Mr. Anderson cannot claim "that he intended to make payments to investors at a later date" because that is not a defense to the alleged charges.  *Id*.  The government also recognizes that "good faith" can mean an honest belief in the truth of the misrepresentations, which may negate an intent to defraud.  *United States v. Benny*, 786 F.2d 1410, 1417 (9th Cir. 1986).  The defense agrees that even if Mr. Anderson intended to compensate the investors, that is not a valid legal defense to the alleged charges.  The defense emphasizes they should be able to use a "good faith" defense to assert that Mr. Anderson did not have the specific intent to defraud.

Indeed, it is improper for the defense to argue that Mr. Anderson intended to compensate

the investors at a later date because that is not a valid legal defense to the alleged charges. *United States v. Miller*, 953 F.3d 1095, 1103 (9th Cir. 2020) ("Intent to repay, therefore, is not a defense to wire fraud."). The defense also cannot argue that Mr. Anderson honestly believed in "the ultimate success of an enterprise." *United States v. Beecroft*, 608 F.2d 753, 757 (9th Cir. 1979). Nonetheless, "an honest, good-faith belief in the truth of the misrepresentations may negate intent to defraud." *United States v. Benny*, 786 F.2d 1410, 1417 (9th Cir. 1986).

Taking into account the above, the motion is GRANTED IN PART.

4. MIL No. 4

In the fourth motion in limine, the government moves *in limine* for an order to compel reciprocal Rule 16 and 18 U.S.C. § 3500 materials or to preclude the defense from introducing in its case-in-chief any evidence responsive to Rule 16 and 18 U.S.C. § 3500 that has not been provided to the government by [November 14], 2023 (the court substituted the pretrial conference date). U.S. Mot. at 11. The defense "does not oppose an order by the Court excluding evidence that a party fails to disclose in violation of Rule 16 or any other discovery disclosure obligation, as long as the order is applied to both parties." Anderson Opp'n at 5.

The Court therefore GRANTS the motion as unopposed. Both parties shall produce discovery pursuant to Fed. R. Crim. P. Rule 16 and 18 U.S.C. § 3500 before November 14, 2023. If they fail to do so, the evidence shall be precluded from that party's case-in-chief. Both sides have represented they have produced everything currently in their possession which falls within the ambit of these provisions and are aware of their continuing duty to promptly produce any newly discovered materials.

5. MIL No. 5

In the fifth motion in limine, the government moves to admit evidence of Mr. Anderson's prior securities fraud conviction as evidence of intent and/or knowledge. Fed. R. Evid. 404(b)(2). In 2002, Mr. Anderson pled guilty to one count of securities fraud in violation of 15 U.S.C. §§ 78(j) and 78ff. In his 2002 plea agreement, he admitted the following:

- He was the Chairman and Chief Executive Officer of a public company;
- He knowingly engaged in a series of fraudulent actions which resulted in the improper

United States District Court
Northern District of California

9

recognition of $13.5 million in purported sales as revenue;

- The purpose of his acts was to inflate the reported revenue and reduce net losses for the company in order to meet internal targets and analysts' forecasts;

- As part of his conduct, he knowingly submitted a fabricated e-mail and forged document ostensibly from a purported customer to cause $2 million in revenue to be recognized in a particular quarter. When employees of the purported customer discovered the fabrications, he fabricated documents to conceal that discovery.

- Further, Anderson admitted to knowingly submitting a forged letter and a fabricated contract with another purported customer in order to recognize an additional $7 million in revenue. He subsequently lied to auditors and forged an audit confirmation related to the fabricated transaction.

- Finally, Anderson knowingly submitted another forged document which purported to allow the recognition of $2 million in revenue from a contingent transaction with another purported customer. *See* U.S. Mot. 13-14.

In this case, the government intends to prove that Mr. Anderson fabricated numerous income statements showing that his companies were profitable, forged numerous contracts indicating that there were pending acquisitions for his companies for tens of millions of dollars, and conducted misrepresentations and omissions to garner friends and neighbors' investments, who ultimately transferred more than $8 million to bank accounts Mr. Anderson controlled. U.S. Trial Brief, 2

Evidence of a prior conviction may be admissible to prove intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident but it is inadmissible to prove propensity. FRE 404(b). There are four requirements that the government must prove for evidence of a prior conviction to be admissible:

(1) It must prove a material element of the offense for which the defendant is now charged;
(2) In certain cases, the prior conduct must be similar to the charged conduct;
(3) Proof of the prior conduct must be based upon sufficient evidence; and
(4) The prior conduct must not be too remote in time.

*United States v. Arambula-Ruiz*, 987 F.2d 599, 602-03 (9th Cir. 1993). The Ninth Circuit has said that 404(b):

[I]s a rule of inclusion—not exclusion—which references at least three categories or other 'acts' encompassing the inner workings of the mind: motive, intent, and knowledge. Once it has been established that the evidence offered serves one of these purposes, the relevant Advisory Committee Notes make it clear that the 'only' conditions justifying the exclusion of the evidence are those described in Rule 403.

*United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007). "So long as the evidence is offered for a proper purpose, the district court is accorded wide discretion in deciding whether to admit the evidence, and the test for admissibility is one of relevance." *United States v. Flores-Blanco*, 623 F.3d 912, 919 (9th Cir. 2010) (quoting *United States v. Johnson*, 132 F.3d 1279, 1282 (9th Cir. 1997).).

Turning to the four factors, the first factor requires that the prior conviction proves "a material element of the offense for which the defendant is now charged." *Arambula-Ruiz*, 987 F.2d at 602-03. Here, intent and knowledge are elements of the charged offenses. 9th Cir. Model Instruction Nos. 15.35, 15.47. The Ninth Circuit has previously held that "similar acts are particularly probative in cases charging forgery, deceit, and counterfeiting, where … the charges include *mens rea* elements of knowledge and intent." *United States v. Isibor*, 789 Fed.Appx. 76, 77 (9th Cir. 2020) (citing five 9th Circuit cases) (holding that a district court did not abuse its discretion in admitting a prior conviction of conspiracy to commit bank fraud in a case where one of the charged crimes was bank fraud). "The greater the similarity of the prior act to the present offense, the less tenuous the logical inference that may be drawn from the prior act regarding knowledge or intent." *United States v. Mehrmanesh*, 689 F.2d 822, 831 (9th Cir. 1982). Here, Mr. Anderson's prior conviction was for securities fraud, which is one of the charged crimes in this present case. More importantly, as explained in greater detail below, in both cases, Mr. Anderson committed a fraud scheme allegedly using a similar technique–use of forged documents and false documentation of fake transactions to falsely inflate the financial performance of entities he controlled and managed. Mr. Anderson's knowledge in how to commit the fraud scheme in the 2002 conviction is therefore relevant to show his knowledge of how to do so in the present case. Admissibility under Rule 404(b) may be proper where the court finds "at least some local connection, however weak, to a central element of [the] case." *Id*. at 831.

The second factor says that "in certain cases, the prior conduct must be similar to the

United States District Court
Northern District of California

charged conduct." *Arambula-Ruiz*, 987 F.2d at 602-03. "The similarity requirement does not require that the prior bad act be precisely the same as the charged act, as long as the prior act was one which would tend to make the existence of the defendant's knowledge more probable than it would be without the evidence." *United States v. Sanchez*, 2023 WL 1822562 *5 (D. Idaho 2023) (quoting *United States v. Rodriguez*, 880 F.3d 1151, 1167 (9th Cir. 2018). The prior bad act needs to be similar, but it doesn't need to be the same to be admissible. In *Naghdi*, the Ninth Circuit held the district court did not abuse its discretion in admitting a prior act when the underlying counterfeiting schemes were "virtually identical." 1992 WL 14397, *3 (9th Cir. 1992). In that case, both schemes "arose out of an elaborate scheme to manufacture and sell counterfeit pharmaceutical drugs." *Id.* "In each case, [the crime] arose out of illegal transactions designed to defraud individuals through the sale of counterfeit pharmaceuticals. In each case, the fraud operated in the same manner." *Id.*

In another case, *United States v. Spillone*, a district court did not abuse its discretion in admitting a defendant's prior conviction for making an extortionate extension of credit when the case at bar charged the defendant for using extortionate means to collect extensions of credit. 879 F.2d 514, 519 (9th Cir. 1989). The Court relied on *United States v. Evans* where the prior conviction was for making false statements and for mail and securities fraud and the defendant's trial was for mail fraud and embezzlement. 796 F.2d 264, 265 (9th Cir. 1986). The Court said that in *Evans* "we relied on the fact that the intent element was similar in each charge." *Id.*

Here, both crimes arose out of Mr. Anderson, as CEO of a company, fabricating documents, forging contracts, and making misrepresentations and omissions to recognize considerable gains in revenue, either to his companies or for himself. In the previous case, he pled guilty to securities fraud after inflating reported revenues, reducing net losses to meet internal targets, and improperly gaining millions of dollars in revenue. In that case, he employed similar techniques—creating false documentation of fake transactions. In this case, the circumstances are different, but the underlying technique is very similar. Here, the government intends to prove that Mr. Anderson fabricated numerous income statements showing that his companies were profitable, forged numerous contracts indicating that there were pending acquisitions for his

1 companies for tens of millions of dollars, and conducted misrepresentations and omissions to

2 garner friends and neighbors' investments, who ultimately transferred more than $8 million to

3 bank accounts Mr. Anderson controlled.  U.S. Trial Brief, 2.  The through line is that Mr.

4 Anderson used the same techniques of deception in both instances by forging contracts to

5 misrepresent his profitability.  Though the circumstances are not identical, "the similarity

6 requirement does not require that the prior bad act be precisely the same as the charged act, as

7 long as the prior act was one which would tend to make the existence of the defendant's

8 knowledge more probable than it would be without the evidence."  *Rodriguez*, 880 F.3d at 1167.

9 Therefore, the prior conviction may tend to show that Mr. Anderson knew how to forge and

10 fabricate documents to make others believe that his companies were worth investing in.

11       The third factor says that "proof of the prior conduct must be based upon sufficient

12 evidence."  *Arambula-Ruiz*, 987 F.2d at 602-03.  This prong is a "low threshold."  *United States v.*

13 *Romero*, 282 F.3d 683, 688 (9th Cir. 2002).  This prong is satisfied because Mr. Anderson plead

14 guilty to the prior offense.

15       The fourth factor says that "the prior conduct must not be too remote in time."  *Arambula-*

16 *Ruiz*, 987 F.2d at 602-03.  This Court determines "remoteness based on the time between the date

17 of the prior act and the date of the offense at issue in the current charge, instead of to the date

18 when the prior act is offered into evidence."  *United States v. Toilolo* 2015 WL 540190 (D.

19 Hawai'i 2015) (quoting *United States v. Flores-Blanco*, 623 F.3d 912, 919 (9th Cir. 2010).  Here,

20 Mr. Anderson's prior conviction was in 2002.  In the current indictment, the alleged fraudulent

21 activity began in 2016.  Therefore, Mr. Anderson's prior conviction is 14 years old.

22       The question of "how long is too long" does not have a uniform answer.  *Spillone*, 879

23 F.2d at 519 (quoting *United States v. Beasley*, 809 F.2d 1273, 1277 (7th Cir. 1987).).  Instead, the

24 standard is flexible, and it depends upon the theory that makes the evidence admissible and how

25 similar the prior conviction is to the charged conduct.  *Id.*; *United States v. Vo*, 413 F.3d 1010,

26 1019 (9th Cir. 2005).  In *United States v. Estrada*, Mr. Estrada was convicted for possessing

27 pseudoephedrine knowing that it would be used to manufacture methamphetamine.  453 F.3d

28 1208, 1209 (9th Cir. 2006).  The Ninth Circuit held that the district court did not abuse its

United States District Court
Northern District of California

13

United States District Court
Northern District of California

discretion in allowing Mr. Estrada's 1994 fingerprints from a prior methamphetamine manufacturing operation, which was 10 years prior to the indictment, because the prior incident tended to show Mr. Estrada's knowledge that pseudoephedrine would be used to make methamphetamine. *Id*. at 1213. The Court cited several Ninth Circuit cases allowing prior conviction 10 to 13 years prior. *See United States v. Martinez*, 182 F.3d 1107, 1110-11 (9th Cir. 1999) (10 years); *United States v. Ross*, 886 F.2d 264, 267 (9th Cir. 1989) (thirteen years); *United States v. Spillone*, 879 F.2d 514, 519 (9th Cir. 1989) (over ten years). Likewise, in *United States v. Lewis*, in a case charging a defendant of bank robbery, a 15-year-old conviction for bank robbery was admissible under 404(b). 493 F.Supp.3d 858, 861 (C.D. Cal 2020).

Conversely, if the prior conviction's similarity is more tenuous and the conviction is remote in time, the court may properly exclude the evidence. In *United States v. Mejia-Uribe*, a defendant's 16-year-old conviction involving a single sale of cocaine was inadmissible in a trial where he was convicted of selling cocaine on a large scale with several coconspirators. 75 F.3d 395, 398 (8th Cir. 1996). The Court stated that the prior conviction was too remote, not similar enough, and more prejudicial than probative because it had a weak tendency to show knowledge and intent. *Id*. at 398-99.

Here, Mr. Anderson's prior conviction is 14 years old but the government's theory to render the prior conviction admissible is strong. The underlying technique Mr. Anderson employed in the prior conviction, as previously stated, is very similar to the technique used in the present charged offense and would tend to show that Mr. Anderson knew how to forge contracts to deceive others for profit. In light of that similarity, the 14-year gap is not too remote to render the prior conviction inadmissible. In sum, the four prongs weigh in favor of admitting Mr. Anderson's prior conviction for the limited purpose of showing his knowledge and/or intent. Cases cited by Defendant are distinguishable; none involve the tight nexus of technique and intent present here. *Cf. United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1014 (9th Cir. 1995) (alleged possession of an amount of methamphetamine suitable for personal use is not relevant to prove that the defendant had the requisite knowledge that the chemicals he was dealing with would be used to manufacture methamphetamine); *United States v. Jones*, 389 F.3d 753, 757-58 (7th Cir.

14

1   2004) (defendant's prior conviction of possession of other illegal drugs with intent to distribute

2   does not show that the defendant intended to possess cocaine); *United States v. Bracy*, 67 F.3d

3   1421, 1432 (defendant's prior incidents when he fired a gun in a residential neighborhood were

4   wrongly admitted to show that the defendant possessed guns during a time when he was involved

5   in drug trafficking.).

6          When the four prongs are satisfied, the prior conviction may still be inadmissible "if its

7   probative value is substantially outweighed by a danger of … unfair prejudice."  FRE 403.  When

8   performing an FRE 403 analysis in this context, the Ninth Circuit has said that "similar acts are

9   particularly probative in cases charging forgery, deceit, and counterfeiting, where, as here, the

10  charges include *mens rea* elements of knowledge and intent."  *United States v. Isibor*, 789

11  Fed.Appx. 76, 77 (9th Cir. 2020) (citing five 9th Circuit cases).  "Similar acts evidence 'may be

12  critical to the establishment of the truth as to a disputed issue, especially when that issue involves

13  the actor's state of mind and the only means of ascertaining that mental state is by drawing

14  inferences from conduct."  *United States v. Akpa*, 120 Fed.Appx. 717, 719 (9th Cir. 2005)

15  (quoting *Huddleston v. United States*, 485 U.S. 681, 685 (1988).).

16         In *United States v. Henderickson*, the defendant was convicted of cyberstalking.  2023 WL

17  5453234 *2 (9th Cir. 2023).  The district court did not abuse its discretion by admitting her prior

18  conviction, which showed that she knew how to use technology to impersonate another individual

19  and cover her tracks.  "Although the prior acts evidence may have been prejudicial to Defendant,

20  that fact does not require its exclusion, particularly given its probative value when the main

21  defense was that someone else could be responsible for the charged conduct.  'Even where

22  evidence is highly prejudicial, it is not necessarily unfairly prejudicial.'"  *Id*. (quoting *United

23  States v. Thornhill*, 940 F.3d 1114, 1123 (9th Cir. 2019).  Likewise, here, Mr. Anderson's prior

24  conviction is probative to show that he knew how to forge contracts to deceive others for profit.

25  This evidence is prejudicial inasmuch as it tends to inculpate Mr. Anderson, but its prejudicial

26  value does not substantially outweigh its probative value.Additionally, the government suggests

27  that Mr. Anderson had a fiduciary duty to report his prior conviction to the investors and failed to

28  do so, and that the prior conviction may be admitted to demonstrate a material omission.  But the

United States District Court
Northern District of California

15

1   government provides no clear authority for this proposition.  Moreover, this argument may lead to

2   jury confusion as the jury already must grapple with the main theory of falsity of financial

3   statements in this case.  Such an argument is barred under FRE 403.

4        The Court GRANTS the motion.  The government may use evidence of Mr. Anderson's

5   prior conviction to show knowledge.  The jury will be instructed to view the prior conviction for

6   this limited purpose.  9th Cir. Model Instruction 2.10.

7        6.  MIL No. 6

8        In the sixth motion in limine, the government argues that the Court should admit evidence

9   of Mr. Anderson's personal financial condition because it is probative of motive and intent.  The

10  government seeks to offer evidence that Mr. Anderson's fraud enabled him and his family

11  members to drive Mercedes-Benz sedans, enjoy a Lake Tahoe vacation house, and demonstrate to

12  friends, neighbors, and potential investors that Anderson was a successful businessman.  U.S. Mot.

13  at 18, 20.

14       "The court may exclude relevant evidence if its probative value is substantially outweighed

15  by a danger of … unfair prejudice."  FRE 403.   "The government may not introduce evidence

16  simply to show that a defendant is wealthy or poor, because financial condition alone has little

17  probative value and risks unfair prejudice."  *United States v. Weygandt*, 681 Fed.Appx. 630, 633

18  (9th Cir. 2017) (citing *United States v. Reyes*, 660 F.3d 454, 461 (9th Cir. 2011).).  Wealth alone

19  does not prove motive to commit fraud because "a rich man's greed is as much a motive to steal as

20  a poor man's poverty.  Proof of either, without more, is likely to amount to a great deal of unfair

21  prejudice with little probative value."  *Reyes*, 660 F.3d at 464 (quoting *United States v. Mitchell*,

22  172 F.3d 1104, 1108-09 (9th Cir. 1999).).

23       In *Reyes*, the Ninth Circuit reviewed a defendant's conviction for securities fraud,

24  falsifying corporate books, and making false statements to auditors.  *Id*. at 459.  The government

25  introduced evidence that the defendant received "eleven million backdated options … worth

26  approximately $130 million, and that he exercised 40,000 of his backdated options … for a gain of

27  approximately $2 million."  *Id*. 463.  This evidence was not unduly prejudicial because "it

28  demonstrated that [the defendant] made money in the backdating scheme" which "relate[s] to

United States District Court
Northern District of California

motive, knowledge, and intent." *Id*.  Similarly, in *Weygandt*, the district court properly admitted evidence of the defendant's "salary and the purchase price of [the company]" and the prosecutor's "various references to [the defendant's] wealth and greed."  681 Fed.Appx. at 633.  This was proper in part because the government introduced it to show that the defendant could have used the money to fix the faulty company equipment that was falsely certifying that airplane parts were repaired, "but decided not to in order to increase his personal earnings," which relates to motive and intent to commit fraud.  *Id*. at 632-33.  Indeed, "motive can be a relevant consideration, and personal financial gain may weigh heavily in favor of a scienter inference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 310 (2007).

Nonetheless, in *Reyes*, "the government was not permitted to introduce evidence simply to show that [the defendant] was wealthy." *Id*.  Additionally, after the defendant made $500 million selling the company's stock outside of the scheme, the Ninth Circuit said, "the district court showed sensitivity to undue prejudice" when it ruled the jury should only be told that the defendant "sold 'a significant amount of [the company's] stock.'" *Id*. at 464.

Here, the government may show that Mr. Anderson profited from the alleged fraudulent dealings.  Evidence that shows that profit went from the investors into Mr. Anderson's bank account, directly or indirectly, and not into the business (as promised) is probative to show Mr. Anderson's wrongful conduct.  This would include evidence tracing investor funds being used to pay Mr. Anderson's personal mortgage as this shows his profiteering from the alleged fraud.

However, the government may not introduce general evidence of Mr. Anderson's worth or how he spent the appropriated funds.  Not only is such evidence not particularly probative to any element of the offense (other than the fact that greed may inform intent to defraud), it may be highly prejudicial and confusing, especially if Mr. Anderson had other sources of income which could account for some of his spending.  For sake of clarity, the Court requires the government to submit a proffer of the accounting it contends shows where the investors' funds were directed; it shall file such proffer by January 5th, 2024.  The defense may submit a rebuttal by January 9th, 2024.  The Court defers ruling on the precise parameters on what the government may present as to the disposition of investor funds.

United States District Court
Northern District of California

1  At the same time, evidence of how defrauded investors perceived Mr. Anderson's financial

2 success is probative of materiality.  The more credible the speaker, the more the "natural tendency

3 to influence, or [capability] of influencing a person to part with money or property …"  9th Cir.

4 Model Instruction No. 15.35.  Thus, while evidence of *e.g.* net worth or particular assets is not

5 admissible in and of themselves, the government may elicit testimony from the investors regarding

6 their *perception* of Mr. Anderson's wealth and status and how that affected their decision to invest

7 with him.

8  Accordingly, the Court GRANTS IN PART AND DENIES IN PART the motion.  The

9 government may show that Mr. Anderson personally profited from the fraud and introduce

10 evidence that investor money went to Mr. Anderson instead of the business.  The government may

11 also elicit testimony that the investors were induced to invest with Mr. Anderson in part because

12 of their perception of his financial success.  The government may not, however, show Mr.

13 Anderson's assets simply to prove that he is wealthy.  As noted above, the government has until

14 January 5th, 2024, to submit its proffer.  The defense may submit a response which is due on

15 January 9th, 2024.

16 **II.  MR. ANDERSON'S MILS (DOCKET NO. 53)**

17 1.  MIL No. 1

18  The issue raised in Mr. Anderson's first motion in limine (*i.e.*, whether Mr. Anderson's

19 prior conviction is admissible pursuant to FRE 404(b)) has already been addressed above in the

20 government's MIL No. 5.  The defense's motion is DENIED.

21 2.  MIL No. 2

22  The issue raised in Mr. Anderson's second motion in limine (*i.e.*, whether Mr. Anderson's

23 spending is admissible) has already been addressed above in the government's MIL No. 6.  The

24 motion is GRANTED IN PART, DENIED IN PART, and deferred in part.

25 3.  MIL No. 3 [discussed above]

26 4.  MIL No. 4

27  In the fourth motion in limine, Mr. Anderson asks the Court to exclude all emails and

28 email attachments using the email accounts aanderson@imbee.come and/or

aanderson@fanlala.com claiming that the emails are inadmissible unless properly authenticated under FRE 901.  In response, the government says "the emails will be authenticated by each investor who received the communications.  Each witness can lay a foundation establishing that they received the email, that the email was not altered since they received it, and why they believe it was sent by Anderson."  U.S. Opp'n at 11.

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  FRE 901(a).  To prove authentication, a party must introduce "enough evidence to allow a reasonable juror to find that an exhibit is what is claims to be."  *United States v. Shults*, 730 Fed.Appx. 421, 424 (9th Cir. 2018).  After that, the reliability of the exhibit goes "to the weight the jury should give it, not its admissibility."  *Id*.

The Court defers ruling until it can hear the witnesses' testimony authenticating the emails.

5.      MIL No. 5

In the fifth motion in limine, Mr. Anderson asks two things: (1) for the Court to exclude any unnoticed expert testimony pursuant to Federal Rule of Criminal Procedure 16(G) and (2) for the Court to preclude FBI Financial Analyst Kristoffer Pasucal as either a summary witness or as an expert witness.

For the first request, the government submits that it will not offer expert witness testimony in its case-in-chief but would like to reserve the right to call an expert witness in rebuttal, if necessary, based on the defense's case.  Rule 16(G)(i) states that at the defendant's request, the government must disclose to the defendant expert testimony it intends to use at trial "during its case-in-chief, or during its rebuttal to counter testimony the defendant has timely disclosed under (b)(1)(C)."  Fed. Rule Crim. Proc. 16(G)(i).  If the defense submits expert testimony right before the discovery cutoff, the government shall have 30 days to identify expert testimony "solely to contradict or rebut evidence on the same subject matter."  Fed. Rule Civ. Proc. 26(a)(2)(D)(ii).  Additionally, when an "expert's testimony is 'intended solely to contradict or rebut evidence on the same subject matter identified by an initial [opposing party's] expert witness,'" a party "need not disclose an expert within the deadline for initial expert reports and can instead disclose an

1    expert as a 'rebuttal expert.'"  *People v. Kinder Morgan Energy Partners, L.P.*, 159 F.Supp.3d.

2    1182, 1191 (S.D. Cal. 2016) (quoting *Clear-View Techs., Inc. v. Rasnick*, 2015 WL 3509384 *2

3    (N.D. Cal. 2015).).  Therefore, pursuant to Rule 16(G), any unnoticed expert testimony will be

4    excluded unless the defense submits expert testimony before the discovery cutoff.  If the defense

5    presents an expert witness, and the government wants to call a rebuttal witness, they may do so

6    even if it is passed the discovery cut off (and vice versa).  However, if counsel thinks there will be

7    a rebuttal witness, they should disclose that information as soon as possible.  To do otherwise risks

8    exclusion; if the Court deems the witness not one solely for rebuttal and thus one which should

9    have been disclosed in advance, the Court reserves the power to exclude that witness.  Both parties

10   have indicated they do not intend to call expert witnesses in their case-in-chief.

11       For the second request, the defense contends that the government has noticed FBI

12   Financial Analyst Kristoffer Pasucal to provide summary witness summation of Mr. Anderson's

13   bank records but has not noticed Analyst Pasucal as an expert.  According to the government,

14   Analyst Pasucal will testify regarding his analysis of voluminous financial records and bank

15   accounts relating to Mr. Anderson and his companies.

16       Summary evidence is admissible if "the underlying materials upon which the summary is

17   based (1) are admissible in evidence and (2) were made available to the opposing party for

18   inspection."  *United States v. Aubrey*, 800 F.3d 1115, 1129 (9th Cir. 2015) (quoting *United States

19   v. Rizk*, 660 F.3d 1125, 1130 (9th Cir. 2011).); *see* FRE 1006.  A lay witness may be a summary

20   witness.  *Id*.  The summary witness need not be qualified and noticed as an expert.  A lay witness

21   may testify "to the areas in which he had personal knowledge (the documents, investigation, and

22   the methods he used to prepare his summary)."  *Id*.  A lay witness who is not noticed as an expert

23   may not testify to "forms of analysis that he may have used when creating his summary" because

24   that would be improper expert testimony.  *Id*.

25       Here, Analyst Pasucal may provide summary lay witness testimony for the government.

26   The underlying bank records were submitted into evidence and there is no suggestion from the

27   defense that the records are inadmissible.  So long as Analyst Pasucal describes the voluminous

28   records and how those records have been summarized – a task a lay person could perform – his

United States District Court
Northern District of California

1   testimony would not be expert testimony.  If Analyst Pasucal veers into expert testimony,

2   explaining forms of analysis or other methodologies similar to that which an accountant or

3   statistician might be called upon to employ their expertise, the Court will consider an objection

4   from the defense at that time.

5        For the reasons stated above, the first part of the defense's motion is GRANTED, and the

6   second part is DENIED.  First, pursuant to Rule 16(G), any unnoticed expert testimony will be

7   excluded other than a true rebuttal expert.  Second, Analyst Pasucal may testify as a summary lay

8   witness.

9        6.    MIL No. 6

10       In the sixth motion in limine, Mr. Anderson asks the Court to prohibit introduction of any

11  documents not previously produced in discovery pursuant to Fed. R. Crim. P. 16(d)(2).  Further,

12  "the defense requests the Court to order the government to provide him with prompt written notice

13  of its intention to use any unnoted discoverable evidence in its case-in-chief."  Anderson Mot. at

14  15.

15       The government must produce documents which are within its "possession, custody, or

16  control."  *United States v. Cano*, 934 F.2d 1002, 1022 (9th Cir. 2019).  The government states it

17  has produced all documents responsive to Rule 16, but that it is "common for the government to

18  learn of new information or [to] receive additional documents in advance of trial."  U.S. Opp'n at

19  14.  It has reaffirmed its ongoing discovery obligation.

20       For the reasons stated above, the defense's motion is DENIED without prejudice.  The

21  government is required to maintain their adherence to their ongoing discovery obligations, but the

22  defense may raise this issue again if they have reason to believe the government is not meeting its

23  required obligations.

24       7.    MIL No. 7

25       In the seventh motion in limine, Mr. Alan Anderson asks to designate investigator Fredrick

26  Anderson as a "case agent" so he can be in the courtroom throughout the duration of the trial

27  pursuant to FRE 615.  The government does not object to this request.

28       Defense states that Mr. Fredrick Anderson may testify in this case.  *See* Anderson Witness

United States District Court
Northern District of California

21

United States District Court
Northern District of California

List.  Typically, witnesses that may testify are excluded from the courtroom while evidence is being presented unless an exception applies.  Under FRE 615(c):

> At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony.  Or the court may do so on its own.  But this rule does not authorize excluding … a person whose presence a party shows to be essential to presenting the party's claim or defense.

The Committee Rules state that this category, of persons whose presence is essential to presenting the party's claim or defense, contemplates "such persons as … an expert needed to advise counsel in the management of the litigation." *Id.*, Advisory Committee Notes, 1972 Proposed Rules.

"The purpose of this [general] rule is to prevent witnesses from 'tailoring' their testimony to that of earlier witnesses." *United States v. Seschillie*, 310 F.3d 1208, 1212 (9th Cir. 2002) (quoting *United States v. Ell*, 718 F.2d 291, 293 (9th Cir. 1983).  Rule 615 "is designed to preclude fact witnesses from shaping their testimony based on other witnesses' testimony." *Opus 3 Ltd. v. Heritage Park, Inc.*, 91 F.3d 625, 629 (4th Cir. 1996).

The burden is on the party requesting the exception to make "a fair showing" that "the expert witness is in fact required for the management of the case." *Id.* (quoting *Morvant v. Construction Aggregates Corp.*, 570 F.2d 626, 630 (6th Cir. 1978).).  "But a ruling under section (3) resembles a trial court's evidentiary rulings, which fall within the courts' broad discretion over the conduct of trials." *Morvant*, 570 F.2d at 628-29.

Defendant has adequately established that Mr. Fredrick Anderson's presence is essential to the presentation of the case due to the length of the case, the number of anticipated witnesses, and amount of anticipated evidence.  Mr. Fredrick Anderson has deep knowledge of the facts of this case; his absence would impede the ability of counsel for Mr. Alan Anderson to function.

Mr. Fredrick Anderson may be designated as a case agent in this case.  If he testifies, however, he may be subject to cross examination about his credibility on the basis that he could have tailored his testimony after listening to other witnesses in the courtroom.

For the reasons stated above, the motion is GRANTED.

8.    <u>MIL No. 8</u>

1    In the eighth motion in limine, Mr. Anderson asks the court to exclude witnesses from the

2    courtroom except those who are a party to the proceeding, or their presence is shown to be

3    essential to the presentation of the party's cause, or the person is authorized by statute to be

4    present.  FRE 615.

5    In response, the government requests that several of their witnesses be present during trial

6    testimony.  First, the government asks that the government's law enforcement witnesses and/or

7    custodians of record be allowed in the courtroom.  Regarding the law enforcement witnesses, the

8    government has noticed the testimony of two Special Agents for the Federal Bureau of

9    Investigations (FBI), Special Agent Meredith Williams and Steven Coffin.  The government

10   asserts that the special agents should be present in court because two FRE 615 exceptions apply.

11   Specifically, the rule "does not authorize excluding … "(b) an officer or employee of a party that

12   is not a natural person, after being designated as the party's representative by its attorney; (c) a

13   person whose presence a party shows to be essential to presenting the party's claim or defense."

14   FRE 615(b).

15   The FRE 615(b) advisory committee's notes "make clear that subsection (b) applies to

16   investigative officers or 'case agents' designated on behalf of the prosecution in criminal cases."

17   *United States v. Valencia-Riascos*, 696 F.3d 938, 941 (9th Cir. 2012) (citing FRE 615 advisory

18   committee's notes, 1972 Proposal, 1974 Enactment.).  "Many district courts permit government

19   counsel to have an investigative agent at counsel table throughout the trial although the agent is or

20   may be a witness."  *Id.  United States v. Gonzalez*, 221 F.3d 1349 at *1 (9th Cir. 2000)

21   (unpublished) ("DEA Special Agent Hinton, INS Special Agent Nygaard, and Idaho Bureau of

22   Narcotics Special Agent White were all case agents for the Government and were therefore

23   exempted from the exclusion under Federal Rules of Evidence 615(2).");  *United States v.*

24   *Alvarado*, 647 F.2d 537, 540 (5th Cir. 1981) (permitting multiple case agents to sit throughout the

25   trial).  Here, since Special Agents Meredith Williams and Steven Coffin "are the lead case agents

26   for the underlying criminal investigation," they should be permitted to sit through the trial.  U.S.

27   Opp'n at 16.

28   Moreover, the government seeks to permit the Agents to stay in the courtroom based on

23

United States District Court
Northern District of California

FRE 615(3), which was previously discussed.  Under 615(3), a case agent may be permitted to stay in the courtroom if they are essential to the management of the case and the party has presented a clear representation of such.  The government represents that the Agents may be asked to conduct additional investigation and research based on the testimony given by trial witnesses, and their familiarity with the events of trial will be essential to completing those tasks.  U.S. Opp'n at 16-17.  The need for the Special Agents to conduct additional investigation based on the testimony is a fair indication that their presence is needed for the management of the case.  Therefore, Special Agents Meredith Williams and Steven Coffin may be present during the course of trial.  As above, they will be subject to cross examination as to whether their testimony may have been tailored based on the testimony of other witnesses.

The government also contends that most of the witnesses in this case are statutory victims under the Crime Victims' Rights Act (CVRA) and should therefore be allowed to attend the trial.  An exception to witness sequestration is "person[s] authorized by statute to be present."  FRE 615.  Under the Crime Victims' Rights Act (CVRA), a crime victim has:

> The right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding. … Before making [this] determination …, the court shall make every effort to permit the fullest attendance possible by the victim and shall consider reasonable alternatives to the exclusion of the victim from the criminal proceeding.  The reasons for any decision denying relief under this chapter shall be clearly stated on the record.

18 U.S.C. §§ 3771(a)(3), (b)(1).  In *In re Mikhel*, the Ninth Circuit reversed a district court judge who had excluded victim witnesses "without determining whether their testimony would be 'materially altered' were they allowed to witness the entire trial" or "whether there were 'reasonable alternatives' that would enable the victim-witness to attend the trial pursuant to § 3771(b)."  453 F.3d 1137, 1139 (9th Cir. 2006).  The Court went on to say:

> A mere *possibility* that a victim-witness may alter his or her testimony as a result of hearing others testify is therefore insufficient to justify excluding him or her from trial.  Rather, a district court must find by clear and convincing evidence that it is *highly likely*, not merely *possible*, that the victim-witness will alter his or her testimony.

*Id*. (referencing *United States v. Johnson*, 362 F.Supp.2d 1043, 1056 (N.D. Iowa 2006).

24

United States District Court
Northern District of California

1    Therefore, the government's testifying victim witnesses may be present during trial unless

2  the Court receives clear and convincing evidence that the victim witness' testimony may be

3  materially altered if they attend trial.  However, the victims should be on notice that if they do

4  choose to stay in the courtroom during other witnesses' testimony, they may be subject to cross

5  examination and their credibility may be put into question.  The government should inform these

6  witnesses of the potential risk of non-sequestration.

7    The government does not oppose the exclusion of the remaining witnesses from the

8  courtroom.  The remaining witnesses are an FBI financial analyst and the custodians of record.

9    For the reasons stated above, the defense's motion is GRANTED.  Law enforcement case

10  agents and investor victims may be present in the courtroom, though their credibility may be

11  questioned during cross examination.  All other government witnesses are excluded from the

12  courtroom during other witness's testimony.

13    9.    MIL No. 9

14    In the ninth motion in limine, Mr. Anderson asks the court to order production of grand

15  jury transcripts of a witness who likely will testify at the trial of Mr. Anderson who has previously

16  testified before the grand jury.  In response, the government states that the Court has already

17  granted the government authorization to produce grand jury testimony to the defendant.  United

18  States' Ex Parte Application and Order Permitting Disclosure of Grand Jury Transcript, Docket

19  No. 43.  The government says they will produce the transcripts of any grand jury testimony and

20  admitted exhibits prior to the pretrial conference.

21    For the reasons stated above, the defense's motion is GRANTED.

22    10.    MIL No. 10

23    In the tenth motion in limine, Mr. Anderson asks the court to order that any released

24  government witnesses be considered under defense subpoena.  The defense says that sometimes

25  witnesses noticed for trial are released by the government without informing the defense, and

26  thereafter become unavailable.

27    With respect to civil witnesses, the government says the "Defendant moves the Court to

28  designate all noticed government witnesses as under defense subpoena.  The government does not

oppose the motion with respect to civilian witnesses.  U.S. Opp'n at 17.

With respect to law enforcement witnesses, the government says the defense must comply with *Touhy* regulations requiring notice and a demand for testimony pursuant to 28 U.S.C. C.F.R. § 16.21-29.  Indeed, there are several regulations prescribing how and when the government may distribute its records as provided by statute.  5 U.S.C.A § 301; 28 U.S.C C.F.R. § 16.21-29.  *United States ex rel. Touhy v. Ragen* provides that a government official may refuse a court's order of government papers if the refusal is in alignment with the relevant regulations.  340 U.S. 462, 467 (1951).

The defense must "forward a statement along with the subpoena that provides the anticipated scope of the witness's testimony and how that testimony is relevant to the proceeding, or the relevancy of requested records to the proceeding."  *Compliance with Touhy Regulations*, U.S. MARSHALS SERVICE, https://www.usmarshals.gov/resources/guideline/compliance-touhy-regulations.  The defense may, therefore, submit to the government a *Touhy* subpoena or letter (which the Court will treat as a functional equivalent) to designate their government agent witnesses under defense subpoena in the possible eventuality that the government releases the government agent witnesses from testifying for the government.  The defense must submit these subpoenas/letters to the government by January 5th, 2024.

For the reasons stated above, the defense's motion is GRANTED in part.  Any released government civilian witnesses will be considered under defense subpoena.  Any released government agent witnesses will be considered under defense subpoena, provided that the defense submits to the government a *Touhy* subpoena/letter by January 5th, 2024, and the subpoena/letter is approved based upon the relevant *Touhy* regulations.

11.     MIL No. 11

In the eleventh motion in limine, Mr. Anderson asks the Court to disallow the government from presenting the indictment to the jury.  The government does not oppose this motion.  The Ninth Circuit has held that the "matter of sending [an] indictment … to the jury is a matter entirely in the discretion of the trial court."  *United States v. Knapp*, 1994 WL 20017 *2 (9th Cir. 1994) (quoting *Shayne v. U.S.*, 255 F.2d 739. 743 (9th Cir. 1958), *cert. denied*, 358 U.S. 823 (1958)).

1   However, the Jury Instructions Committee of the Ninth Circuit cautions against it.

2          Therefore, the motion is GRANTED.

3      12.   <u>MIL No. 12</u>

4          In the twelfth motion in limine, Mr. Anderson asks the court to order the government to

5   produce *Henthorn*, *Brady*, *Giglio*, and *Jencks* materials prior to and after the applicable deadlines

6   have passed.  In response, the government states it has produced all discovery that it is required to

7   produce, and if it received any new discovery after the applicable deadlines have passed, it will

8   promptly disclose that information to the defense.  U.S. Opp'n at 18.

9              For the above reasons, the defense's motion is therefore GRANTED.

10     13.   <u>MIL No. 13 [already addressed]</u>

11     14.   <u>MIL No. 14 [already discussed]</u>

12     15.   <u>MIL No. 15</u>

13         In the fifteenth motion in limine, Mr. Anderson asks the Court to allow the defense to

14   reserve any additional issues he may discover as he prepares for trial "to ensure the fair and

15   efficient adjudication by [the] jury of this dispute."  Anderson Mot. at 23.  Mr. Anderson asks for

16   this reservation until the pretrial conference and/or trial itself.  The Government did not address

17   this motion at all in their response.

18         The Government and the Defense may raise any additional issues prior to the trial.

19                      **V.      EXHIBITS**

20         The Court is in receipt of the joint exhibit list.

21              **VI.      JURY INSTRUCTIONS & JURY VERDICT FORM**

22         The Court shall address jury instructions in a separate order.  The parties have stipulated to

23   a verdict form which is reasonable.

24         **IT IS SO ORDERED**.

25   Dated: November 20, 2023

26

27   _____

EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California