1  JODI LINKER, Bar No. 230273
2  Federal Public Defender
   Northern District of California
3  CANDIS MITCHELL, Bar No. 242797
4  Assistant Federal Public Defender
   19th Floor Federal Building - Box 36106
5  450 Golden Gate Avenue
6  San Francisco, CA 94102
   Telephone:    (415) 436-7700
7  Facsimile:    (415) 436-7706
8  Email: Candis_Mitchell@fd.org

9
10 Counsel for Defendant Anderson

11
                IN THE UNITED STATES DISTRICT COURT
12
             FOR THE NORTHERN DISTRICT OF CALIFORNIA
13
                      SAN FRANCISCO DIVISION
14

15

16 **United States of America,**          **Case No.:** CR 21–397 EMC

17             Plaintiff,              **DEFENDANT'S RESPONSE TO**
                                       **GOVERNMENT'S REPLY TO**
18       v.                            **DEFENDANT'S SENTENCING**
                                       **MEMORANDUM**
19 **Alan Anderson,**

20             Defendant.             **Court:**        Courtroom 5, 17th  Floor
21                                    **Hearing Date:** September 13, 2024
22                                    **Hearing Time:** 9:00 a.m.

23

24

25

26

27

28

TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................................... i

TABLE OF AUTHORITIES .................................................................................................. i

INTRODUCTION ................................................................................................................. 1

ARGUEMENT ...................................................................................................................... 1

   1.     The companies were not sham companies from inception ................................. 2

   2.     The Guideline loss amount is only the defrauded investor's net loss................ 4

   3.     Revised Guideline loss amounts ....................................................................... 4

      3.1.    Ace Home Health Care Hospice Inc./Lorenzo Friar .................................. 5

      3.2.    Andy Meyers ............................................................................................... 5

      3.3.    Anil Patel/Wine Country Hospitality ........................................................ 6

      3.4.    Annant Patel .............................................................................................. 6

      3.5.    Anthony Zuiker .......................................................................................... 6

      3.6.    Brenda Pannell ........................................................................................... 7

      3.7.    Clark Colvis/Linda Colvis ......................................................................... 7

      3.8.    David Grossman/Neil Grossman ............................................................... 8

      3.9.    Diane Anderson .......................................................................................... 8

      3.10.   Dipak Patel | Dipak 2007 Living Trust ..................................................... 8

      3.11.   Dilley Design Inc | Jack and Reanne Dilley............................................... 9

      3.12.   Edward/Julia DeLorme............................................................................... 9

      3.13.   George Symons ......................................................................................... 10

      3.14.   Greg Cham ................................................................................................ 10

      3.15.   H + H Assets LLC ..................................................................................... 11

      3.16.   Hawthorn Suites by Wyndham ................................................................. 11

      3.17.   Howard Silverman .................................................................................... 12

3.18.   Kelsey McCann .................................................................................. 12

3.19.   Mark Coleman .................................................................................. 12

3.20.   Michelle Fields .................................................................................. 13

3.21.   Phillip Darren Buchanon .................................................................. 13

3.22.   Deborah Pierson .............................................................................. 13

3.23.   Rajool Patel ...................................................................................... 13

3.24.   Randy C Renfro/Ocean Front Equity LP | Capital City Leasing .......................... 14

3.25.   Ray Methany .................................................................................... 14

3.26.   Richard Petzold .............................................................................. 14

3.27.   Richard Toriggino ............................................................................ 15

3.28.   Richard/Larry Hess; Hess Construction ............................................ 15

3.29.   Rodney E Maher/Angela Maher | RE Maher Inc ................................ 15

3.30.   RPM001 Intella Capital/Sushil Patel .................................................. 16

3.31.   Samit Channa .................................................................................. 16

3.32.   Siobhan Delfani/Moe Delfani ............................................................ 17

3.33.   The Entrust Group/Phillip Wall ........................................................ 17

3.34.   The Jones & Royce Revocable Trust .................................................. 18

3.35.   Theodore Kloth MD/Mary Kloth ...................................................... 18

3.36.   Thomas A Whalen Jr ........................................................................ 18

3.37.   Vickie Jackson .................................................................................. 19

3.38.   Vijay Patel ........................................................................................ 19

3.39.   Vikrant Patel .................................................................................... 19

3.40.   Viran Nana/Viren Patel .................................................................... 20

3.41.   Revised Summary Chart .................................................................... 20

CONCLUSION .......................................................................................... 21

1

TABLE OF AUTHORITIES

2

3 **Federal Cases**

4 *United States v. Berger,*
       587 F.3d 1038 (9th Cir. 2009) .................................................................................... 1, 2, 4

5

6 *United States v. Hicks,*
       217 F.3d 1038 (9th Cir. 2000) .................................................................................... 1, 2, 3

7 *United States v. Laurienti,*
       611 F.3d 530 (9th Cir. 2010) ............................................................................................. 4

8

9 *United States v. Zolp,*
       479 F.3d 715 (9th Cir. 2007) ............................................................................................. 4

10

11 **Other**

12 USSG § 1B1.3 ......................................................................................................................... 1, 3

13 USSG § 2B1.1 ............................................................................................................................. 1

14 USSG § 2B1.1 cmt. .................................................................................................................... 1

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INTRODUCTION

Defendant Alan Anderson maintains that the government has failed to meet its burden to demonstrate that Mr. Anderson's loss under the Guidelines is $10,119,822.13 as they have failed to show that all the funds invested were caused by fraudulent acts or omissions by Mr. Anderson.[1] As a result, Mr. Anderson's loss amount should instead reflect the amount of loss directly caused by his actions and reduced by the amount that he paid individual investors prior to the fraud being detected in 2018.

ARGUEMENT

Mr. Anderson is in agreement with the government that the loss should be calculated based upon actual loss to the investors minus money returned to investors prior to detection of the scheme.[2] Actual loss, which is often referred to as "but for" loss, is defined as "the reasonably foreseeable pecuniary harm that resulted from *the offense*."[3] Pecuniary harm is reasonably foreseeable if it is "harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of *the offense*."[4] Notably, the harm has to stem from an offense being committed and actions not related to the offense are not appropriately considered in the Guideline calculations as the actual loss must have a causal link to a defendant's conduct.[5] The Guidelines' loss rules thus "do[ ] not obviate the requirement to show that actual, defendant-caused loss occurred."[6] To meet this standard the government must produce sufficient evidence to show proximate or but-for cause for

---

[1] *See United States v. Hicks*, 217 F.3d 1038, 1048-49 (9th Cir. 2000).

[2] *See* Government Reply, Dkt. 95 at 2.

[3] USSG §2B1.1, comment. (n.3(A)(i))(emphasis added).

[4] USSG §2B1.1, comment. (n.3(A)(iv))(emphasis added).

[5] *United States v. Hicks*, 217 F.3d 1038, 1048 (9th Cir. 2000), *as amended on denial of reh'g* (July 31, 2000) (quoting U.S.S.G. § 1B1.3(a)(3))(holding that government must show both "but-for" and "proximate" causation in establishing loss  as "[t]he Guidelines' 'relevant conduct' provision requires a defendant's sentence to be based on 'all harm that resulted from the acts or omissions' of the defendant.").

[6] *United States v. Berger*, 587 F.3d 1038, 1045 (9th Cir. 2009); *see also* U.S.S.G. app. C vol. II amend. 617, at 178 (2003) (explaining that § 2B1.1 "incorporates [a] causation standard that, at a minimum, requires factual causation (often called 'but for' causation) and provides a rule for legal causation (i.e., guidance to courts regarding how to draw the line as to what losses should be included and excluded from the loss determination)").

asserted loss amounts.[7] Here, the government has failed to do so for all of the investors, thus the loss

for the Guidelines calculations should be far reduced from the government's requested

$10,119,822.13.

1.  **The companies were not sham companies from inception**

Contrary to the government's arguments, Mr. Anderson's child-oriented online businesses,

Imbee (a social medial platform), Fanlala and Fruit Punch (music streaming services) were lawful

companies founded for non-fraudulent purposes. In 2010, Mr. Anderson, purchased tween social

networking website Imbee after its founder died. The following year, Imbee and Fanlala.com merged

to create a youth-oriented online destination that intended to be a site for children including offering

youth directed animation. Prior to the merger, Fanlala, had been an online destination for tweens that

has partnerships with the Disney Channel and Nickelodeon.[8] In February 2015, Cosmic Studios was

bought by Imbee. Cosmic Toast was California-based animation house behind such efforts as

Nickelodeon's animated TV movie *Lalaloopsy Girls: Welcome to L.A. L.A. Prep School*[9] and Disney's

Maker Studios web series *Pugatory*[10] and *Powerhouse.*[11] The government overreaches by categorizing

Mr. Anderson's actions and Imbee, Fanlala, and Fruit Punch all as a "ponzi scheme" or that all

statements made by Mr. Anderson about partnerships with Disney and Nickelodeon as false. The

companies did have some strategic partnerships with Disney and Nickelodeon through its

subsidiaries and did have an income stream—primarily from a music service platform.

While Mr. Anderson was involved with Imbee, Fanlala, and Fruit Punch partnerships were

formed between Fuhu, Inc., creator of the Nabi tablet—the world's first Android tablet built just for

kids. Animated videos were made and distributed. And multiple employees—included children of

some of Mr. Anderson's investors—worked and received payment for work created. The companies

were real and produced product targeted to the tweens and teens that were the focus of Imbee's

online business.

---

[7] *See Berger*, 587 F.3d at 1046–47; *Hicks*, 217 F.3d at 1047–49.
[8] Videos created by Fanlala through partnerships with Disney and Nickelodeon child actors and shows extend back to 2009. *See* https://www.youtube.com/@fanlalatv/videos.
[9] *See* https://www.imdb.com/title/tt4076274/companycredits/?ref_=ttfc_ql_4.
[10] *See* https://www.imdb.com/title/tt5276476/companycredits/?ref_=ttfc_ql_4
[11] *See* https://www.imdb.com/title/tt2141237/companycredits/?ref_=ttfc_ql_4.

1    Though Imbee and Mr. Anderson was never able to make the deals that would ultimately result

2    in the large payouts that the investors had hoped they would receive by investing in the company, the

3    company was functioning, real, and had multiple employees. In that sense, Imbee was like many start-

4    up companies. In 2023, approximately, 3,200 private venture-backed companies went out of business

5    after raising $27.2 billion in venture funding.[12] Mr. Anderson had been engaging in aggressive

6    fundraising to develop a business, acquire subsidiaries that would be beneficial, and using the funds

7    he was raising to establish a stable footing for the market he was trying to reach. Using aggressive or

8    pressure tactics alone to engage in funding is not fraudulent. Where Mr. Andreson failed is when he

9    began using false and exaggerated claims in addition to his aggressive tactics to find funders.

10   Mr. Anderson's early conversations with investors when he spoke about what he hoped to

11   achieve through growing the companies were not factual misrepresentations, nor were promises to

12   repay investors after additional sources of income materialized. Where Mr. Anderson failed his

13   company and his investors was when he overstepped the line from puffery and exaggerated boasts

14   about Imbee's actions and when he delved into factual misrepresentations. Mr. Anderson owns that

15   he made factual misrepresentations to some of his investors to encourage them to invest in Imbee and

16   made his admission of guilty in light of his dishonorable actions. However, the issue remains that it is

17   the government's burden to show a relationship between the defendant's conduct and the determined

18   loss and absent a showing of harmful conduct on behalf of Mr. Anderson, all the investments made

19   the government cannot show that there was harm that resulted "from the acts or omissions of the

20   defendant."[13]

21   While the value of Imbee may have now fallen into the category of worthless now, at the time

22   that Mr. Anderson was encouraging investments in 2010 to 2013, it resembled many other companies

23   whose value could change in the future on the partnership he hoped could be formed.

24

25

26

---

27   [12] Erin Griffith, "From Unicorns to Zombies: Tech Start-Ups Run Out of Time and Money," New York Times, Dec. 7, 2023.

28   [13] *United States v. Hicks*, 217 F.3d 1038, 1048 (9th Cir. 2000), *as amended on denial of reh'g* (July 31, 2000) (quoting U.S.S.G. § 1B1.3(a)(3))

**2.  The Guideline loss amount is only the defrauded investor's net loss**

The government argues that all the investors' net loss should be the loss amount with no tie between Mr. Anderson's fraudulent conduct to each individual investor.[14] In doing so, the government points to two cases *United States v. Laurienti*, 611 F.3d 530 (9th Cir. 2010), and *United States v. Zolp*, 479 F.3d 715 (9th Cir. 2007). However, they are not applicable to determining whether Mr. Anderson's fraudulent conduct would have to extend to each investor. In both, perpetrators took large blocks of deeply discounted stock whose prices were fraudulently raised and then sold at artificially inflated prices.[15] There the court focused on whether the underlying companies were "worthless or practically worthless" to determine what the loss amount was. The courts decided in *Laurienti* and *Zolp* that in "pump and dump" schemes and important consideration is the valuation of the underlying companies on the current stock prices and if "the underlying company has intrinsic value, then the use of the total investment cost is erroneous."[16]

Instead, Mr. Anderson urges the Court to be particular in determining the applicable loss and apply the plain language of the law and "impose sentencing enhancements *only for losses that resulted from the defendant's fraud*."[17] Thus allowing the loss to be calculated only for circumstances where the government can establish that Mr. Anderson committed fraud to the specific investor. For those investors who made their investments without fraudulent conduct, those investors should not be considered losses related to the fraud but merely the losses attributable to the failed business.

**3.  Revised Guideline loss amounts**

Taking into consideration the government's and Mr. Anderson's arguments, he details and summarizes his proposed loss and restitution calculations as below using the information submitted in both the government and Mr. Anderson's underseal filings:

---

[14] Government Reply, Dkt. 95 at 5.
[15] *United States v. Laurienti*, 611 F.3d 530, 534 (9th Cir. 2010); U*nited States v. Zolp*, 479 F.3d 715, 718 (9th Cir.2007).
[16] *Id.*
[17] *Berger*, 587 F.3d at 1043.

**3.1. Ace Home Health Care Hospice Inc./Lorenzo Friar**

The parties are in agreement that Ace Home Health Care Hospice Inc./Lorenzo Friar contributed $80,000 on June 2015, well after fraudulent behavior commenced. Mr. Anderson made no repayments. That total should be properly attributed to both the Guideline loss amount and to restitution owed.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $      80,000.00 | $      80,000.00 | $      80,000.00 | $ 80,000.00 |

**3.2. Andy Meyers**

Mr. Anderson argues that he owes no restitution and no loss should be attributed to Andy Meyers. Mr. Meyers was not an investor in Imbee but rather the owner of Fanlala who agreed to sell the company to Mr. Anderson. The government provided an interview of Mr. Meyers In the interview, Mr. Meyers does not detail any fraudulent statements made by Mr. Anderson to induce him to sell the company. Instead, he stated that Mr. Anderson just failed to continue to make payments for him after Imbee purchased Fanlala. While Imbee, through Mr. Anderson, failed to complete performance of payment of a purchase contract it not properly included within the conduct being prosecuted in this case—fraud to induce investors to invest. Despite their argument, government cannot show that Mr. Anderson had no intention to pay back Mr. Meyers through a combination of additional investors or revenue from Imbee/Fanlala. As a result, the loss should not be counted and Mr. Meyers should not receive restitution through this process, instead he should seek redress in a civil proceeding.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $      510,120 | $      510,120 | $      - | $      - |

### 3.3. Anil Patel/Wine Country Hospitality

The parties agree regarding the Guideline loss and restitution calculations owed due to Mr. Anderson's repayment to Mr. Patel.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $            - | $            - | $            - | $        - |

### 3.4. Annant Patel

Mr. Annant Patel made investments from March 2012 until September 2015. The government offered no proof that the investments that began in 2012 were done with fraudulent inducement. Accordingly, Mr. Anderson argues that only investments made after 2013 could be attributable to fraudulent activity.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $      117,198.00 | $      117,198.00 | $       32,248.00 | $       32,248.00 |

### 3.5. Anthony Zuiker

The government argues that Mr. Zuiker should be credited for the total funds he invested in the company. Mr. Zuiker was both an investor and also contracted with Imbee/Fanlala to for work services. Mr. Zuiker each contribute $57,212.50 to the joint endeavor to create scripts and movies for children's projects which the staff at Fanlala and Imbee did work on. The work was completed and the funds were used to pay employees of the company for their work. The partnership resulted in an animated video series game called "Mysteryopolis" that debuted on Fuhu's subscription service.[18] These funds should not be considered contributions towards a "sham" company—as the government

---

[18] *See* Shauel, Brandy, "Anthony E. Zuiker, Fanlala, Fuhu Partner for Mysteryopolis on nabi Tablets [Interview]", Adweek, (Dec. 18, 2014). https://www.adweek.com/performance-marketing/anthony-e-zuiker-fanlala-fuhu-partner-mysteryopolis-nabi-tablets-interview/; Dave, Paresh, "'CSI' creator targets children with new tablet 'gamified narrative'", Los Angeles Times, (Dec. 22, 2014), https://www.latimes.com/business/technology/la-fi-tn-fanlala-20141222-story.html.

contend—if work was completed and employees were compensated for it. Furthermore, the fact that the partnership existed and a product was created supports the argument that Imbee/Fanlala were real functional companies. Mr. Anderson argues that these funds should be subtracted from the total applicable resulting in an amount attributable to both the guidelines calculation and restitution of $280,637.50.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $    337,850.00 | $    337,850.00 | $    280,637.50 | $    280,637.50 |

### 3.6. Brenda Pannell

Ms. Pannell made an investment of $21,650 on August 30, 2011. In their filings, the government offered up no proof of fraudulent statements made by Mr. Anderson to Ms. Pannell to encourage her investment. As a result, the amount she invested into the company should not be attributed to either the Guideline loss calculation nor the restitution amount.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $    21,650.00 | $    21,650.00 | $    - | $    - |

### 3.7. Clark Colvis/Linda Colvis

Mr. and Ms. Clovis entered into an agreement on to purchase stocks where they received stock certificates on two occasions in February and December 2011. Though bank records do not confirm the transference of funds, the total amount that was intended to be purchased was $300,000 worth of stock. In their filings, the government provided information regarding a purported deal with YouTube or Google. As a result, Mr. Anderson concedes that the investment should be considered, but argues that the full amount should not count towards restitution as the Colvis' claimed the investment loss as a credit towards their taxes and received a tax deduction for it.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $    300,000.00 | $    300,000.00 | $    300,000.00 | $    - |

**3.8. David Grossman/Neil Grossman**

The Grossmans invested $233,305.83 after 2013. While the time-period places the funds after Mr. Anderson began making fraudulent assertions, the government failed to provide support that Mr. Anderson made fraudulent representations to the Grossmans to induce the Grossmans to invest. As a result, the amount they invested into the company should not be attributed to either the Guideline loss calculation nor the restitution amount.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $       233,205.83 | $       233,205.83 | $              - | $              - |

**3.9. Diane Anderson**

The parties are in agreement as to Ms. Anderson's investment amount and payments made to her prior to the detection of the fraud. However, Ms. Anderson her investment very early in June 28, 2010. Aside from the government claims that Imbee was a "sham" company, there was no proof that Mr. Anderson engaged in fraudulent representations to encourage investment. As shown by the subsequent business deals, Imbee was a functioning company. As a result, the amount she invested into the company should not be attributed to either the Guideline loss calculation nor the restitution amount.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $       44,787.52 | $       44,787.52 | $              - | $              - |

**3.10.    Dipak Patel | Dipak 2007 Living Trust**

The parties agree about the total investment amount and the amount returned by Mr. Anderson. Mr. Dipak Patel made investments and loans from February 2011 – June 2012. Aside from the government claims that Imbee was a "sham" company, there was no proof that Mr. Anderson engaged in fraudulent representations to encourage investment. As a result, the amount that should be attributable for guideline purposes is $0. As Mr. Anderson made multiple repayments to Mr. Dipak Patel no amount should be paid in restitution.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $        12,000.00 | $        12,000.00 | $                    - | $                    - |

### 3.11.        Dilley Design Inc | Jack and Reanne Dilley

The Dilley's made investments totaling $166,721 after Mr. Anderson began fraudulent behavior in 2013 so the total amount invested is worthy of consideration for Sentencing Guideline purposes. The government asserts that the Dilley's provided additional investor documents, check copies, and contracts of investments that increase the loss amount to 222,053. Mr. Anderson challenges whether the Court should increase the loss amount based upon these additional documents as the transfers actually recorded in the bank records are a more accurate accounting of the actual loss suffered by the Dilley's rather than contracts for investments and investor documents that might represented unrealized intended loss. Additionally, in calculating the restitution, the government failed to take into account multiple repayments totaling $435.00 to the Dilleys but did so after investigation began in the case in 2020. As a result, the amounts paid to the Dilleys should not be considered for Guidelines purposes but should for restitution. The amount attributable for guideline loss is $166,721.00 and the amount attributable for restitution is $166,286.00.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $      222,053.00 | $      222,053.00 | $      166,721.00 | $      166,286.00 |

### 3.12.        Edward/Julia DeLorme

The DeLormes made investments totaling 37,500 in December 2010. Aside from the government claims that Imbee was a "sham" company, there was no proof that Mr. Anderson engaged in fraudulent representations to encourage investment. As a result, the amount that should be attributable for guideline purposes is $0. As a result, the amount they invested into the company should not be attributed to either the Guideline loss calculation nor the restitution amount.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $        37,500.00 | $        37,500.00 | $                    - | $                    - |

### 3.13.      George Symons

Mr. Symons invested in Imbee after Mr. Anderson informed him that Imbee has a partnership with Mattel worth $10 million dollars.[19] Accordingly, all the funds Mr. Symons invested in Imbee, which total $124,808, should be considered for restitution and count toward calculation of the Guideline calculation. Additionally, Mr. Symons and Mr. Anderson executed a number of loan agreements in September 2021, however, there are no financial records supporting the actual transfer of funds to Mr. Anderson. The loans agreements without subsequent transfer of funds represent intended but not actual loss—thus they should not be considered for restitution. Considering the executed loans as potential loss an additional $363,782 should be counted to the total applicable for Guideline loss. Mr. Anderson revises his initial loss calculation to bring it in line with the government's loss figure so for Mr. Symons, that brings the total to $472,390 for the amount attributable for Guideline loss and $124,808 for restitution.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $     472,390.00 | $     472,390.00 | $     472,390.00 | $     124,808.00 |

### 3.14.      Greg Cham

Mr. Cham was an employee of Imbee, Fanlala, and Fruit Punch and received $61,875.90 in payments not attributable to his paycheck. On September 1, 2015, it is alleged that he made an investment of $49,081.84. Aside from the government claims that Imbee was a "sham" company, the government offers no proof that Mr. Anderson engaged in fraudulent representations to encourage investment. Though the government recommends a restitution payment, the series of payments to Mr. Cham exceed the total amount that Mr. Cham invested. As a result, Mr. Cham should not be reimbursed for his investment and the amount that he paid should not count to the Guidelines loss calculation.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $     2,729.07 | $     2,729.07 | $                -   | $                -   |

---

[19] PSR ¶ 50.

### 3.15.   H + H Assets LLC

H + H Assets LLC made investments totaling $172,500 between December 2011 and April 2012. Aside from the government claims that Imbee was a "sham" company, the government offers no proof that Mr. Anderson engaged in fraudulent representations to encourage investment. As a result, the amount they invested into the company should not be attributed to either the Guideline loss calculation nor the restitution amount.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $      172,500.00 | $      172,500.00 | $              - | $              - |

### 3.16.   Hawthorn Suites by Wyndham

Hawthorn Suites is a hotel associated with the Anil Patel. It made investments from June 2013 to August 2015. The parties are in agreement regarding the total investment made by Mr. Patel through Hawthorn Suits--$22,200. However, the government does not give full credit to the payments Mr. Anderson made to Mr. Patel for his investment. Mr. Anderson notes that Mr. Patel made four investments:

2010-11-12      $25,000.00

2013-06-22      $10,000.00

2014-06-14      $10,000.00

2015-08-30      $12,200.00

Hawthorn Suites made two investments:

2013-06-22      $10,000.00

2015-08-30      $12,200.00

Mr. Anderson argues that the investment made in 2010 was prior to Mr. Anderson engaging in fraudulent conduct, thus not properly considered for restitution or guideline purposes.

Mr. Anderson made $46,300.00 in payments to Mr. Patel which exceeded his investments. Because Mr. Anderson made payments to Mr. Patel and Hawthorn Suites for $46,300 before he was being investigated and Mr. Patel individually invested $32,200 after the fraudulent action occurred

the amount attributable for guideline loss and restitution should be reduced accordingly to be 8,100 for both the Guideline loss and the restitution.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $      22,200.00 | $      20,900.00 | $        8,100.00 | $        8,100.00 |

### 3.17.    Howard Silverman

When interviewed Mr. Silverman could not recall statements made to him by Mr. Anderson and did not indicate that Mr. Anderson made any fraudulent statements that induced him to invest in the company. Aside from the government claims that Imbee was a "sham" company, the government offers no proof that Mr. Anderson engaged in fraudulent representations to encourage investment or that Mr. Anderson's actions caused the demise of the company aside from other business factors. Absent a showing that Mr. Anderson fraudulent induced Mr. Silverman to continue to invest the funds he provided should not be considered towards either the Guideline loss calculation or restitution amount.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $   1,115,802.17 | $ 1,115,802.17 | $                - | $                - |

### 3.18.    Kelsey McCann

The parties are in agreement regarding the loss and restitution for Mr. McCann.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $      69,804.00 | $      64,803.00 | $      69,804.00 | $      64,803.00 |

### 3.19.    Mark Coleman

Mr. Coleman made his investment 2010. Aside from the government claims that Imbee was a "sham" company, the government offers no proof that Mr. Anderson engaged in fraudulent representations to encourage investment well in advance of the time that Mr. Anderson engaged in fraudulent conduct related to Imbee. As a result, Mr. Coleman is not entitled to restitution nor should

his investment be attributed to the Guideline calculation.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $        25,000.00 | $        25,000.00 | $                    - | $                    - |

**3.20.    Michelle Fields**

The parties are in agreement regarding the loss and restitution for Ms. Fields.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $                    - | $                    - | $                    - | $                    - |

**3.21.    Phillip Darren Buchanon**

Mr. Buchanon made his investment 2011. Aside from the government claims that Imbee was a "sham" company, the government offers no proof that Mr. Anderson engaged in fraudulent representations to encourage investment well in advance of the time that Mr. Anderson engaged in fraudulent conduct related to Imbee. As a result, Mr. Buchanon is not entitled to restitution nor should his investment be attributed to the Guideline calculation.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $        34,000.00 | $        34,000.00 | $                    - | $                    - |

**3.22.    Deborah Pierson**

The parties are in agreement regarding the loss and restitution for Ms. Pierson.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $                    - | $                    - | $                    - | $                    - |

**3.23.    Rajool Patel**

Mr. Patel made his investment for $110,000 in 2012, in advance of the time that Mr. Anderson engaged in fraudulent conduct related to Imbee. Aside from the government claims that Imbee was a

"sham" company, the government offers no proof that Mr. Anderson engaged in fraudulent representations to encourage investment well in advance of the time that Mr. Anderson engaged in fraudulent conduct related to Imbee.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $      110,000.00 | $      110,000.00 | $                - | $                - |

### 3.24.  Randy C Renfro/Ocean Front Equity LP | Capital City Leasing

The government and Mr. Anderson are in agreement as to loss and restitution. Mr. Anderson modifies his previous recommendation, having confirmed the additional $70,000 in fees that was the difference between his initial submission and the current and calculates the loss and restitution the same as the government.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $   2,396,094.00 | $ 2,396,094.00 | $   2,396,094.00 | $ 2,396,094.00 |

### 3.25.  Ray Methany

Mr. Matheny made investments in 2011 and 2012. Aside from the government claims that Imbee was a "sham" company, the government offers no proof that Mr. Anderson engaged in fraudulent representations to encourage investment well in advance of the time that Mr. Anderson engaged in fraudulent conduct related to Imbee.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $       17,000.00 | $       17,000.00 | $                - | $                - |

### 3.26.  Richard Petzold

Mr. Anderson agrees with the government's assessment of loss and restitution for Mr. Petzold.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $                - | $                - | $                - | $                - |

**3.27.     Richard Toriggino**

Mr. Anderson agrees with the government's assessment of loss and restitution for Mr. Toriggino.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $              - | $              - | $              - | $              - |

**3.28.     Richard/Larry Hess; Hess Construction**

Mr. Richard Hess made a series of investments in Imbee on the basis of a long-term friendship with Mr. Anderson. Mr. Hess encouraged Larry Hess to also invest in the company based upon his interest in a safe internet space for children. Though the Hesses began their investments before Mr. Anderson began making fraudulent statement and continued to make their investments after Mr. Anderson began making fraudulent statements to his investors it is unclear whether either was made aware of the statements as part of the calculus to make an investment in the company. The government offers no proof that Mr. Anderson engaged in fraudulent representations to encourage investment well in advance of the time that Mr. Anderson engaged in fraudulent conduct related to Imbee. As a result, Mr. Anderson would argue that the amounts invested by the Hesses should not be considered as part of the Guideline calculation nor for restitution purposes.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $     102,860.00 | $     102,860.00 | $              - | $              - |

**3.29.     Rodney E Maher/Angela Maher | RE Maher Inc**

The Mahers began investing with Imbee in 2011. All the investments Mr. Maher made after 2012 should be considered for the purpose of sentencing Guideline calculations as well as for restitution. Because Mr. Anderson did make some payments to the Mahers both before and after he was being investigated the Guideline calculation and restitution amounts should be modified to

reflect the payments. As a result, the amounts attributable to Guideline loss is $708,273.11 and the amount for restitution should be $685,311.11.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $   1,329,073.00 | $  1,329,073.00 | $      708,273.11 | $      685,311.11 |

### 3.30.    RPM001 Intella Capital/Sushil Patel

Mr. Patel made his investment for $10,000 in 2010, well in advance of the time that Mr. Anderson engaged in fraudulent conduct related to Imbee. The government offers no proof that Mr. Anderson engaged in fraudulent representations to encourage investment well in advance of the time that Mr. Anderson engaged in fraudulent conduct related to Imbee. As a result, Mr. Patel is not entitled to restitution nor should his investment be attributed to the Guideline calculation.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $       10,000.00 | $       10,000.00 | $             - | $             - |

### 3.31.    Samit Channa

Samit Channa made bank documented investments and promised loans between 2010 and 2013.

| | |
|---|---|
| 2010-11-09 | 35,000.00 |
| 2011-06-09 | 20,350.00 |
| 2011-07-01 | 20,350.00 |
| 2011-11-14 | 15,000.00 |
| 2012-08-09 | 4,000.00 |
| 2013-05-03 | 12,000.00 |
| 2013-06-19 | 25,000.00 |

Considering the investments made after 2013 to be those resulting from fraudulent conduct and taking into consideration the $25,304.31 the government agrees was returned to Channa the guidelines and restitution for Mr. Channa should be $11,695.69.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $     106,395.69 | $     106,395.69 | $     11,695.69 | $     11,695.69 |

### 3.32.    Siobhan Delfani/Moe Delfani

The Delfanis initially invested in Imbee based upon the strength of their personal relationship with Mr. Anderson. That changed in 2015 after Mr. Anderson's fraudulent statement. The government and defense have a different opinion as to the funds Mr. Anderson returned to the Delfanis as the government believes the amount is $290,370, and Mr. Anderson documents the total as $325,370 with the bank record confirmed repayments as shown below.

2010-09-08      $35,000.00

2013-08-07      $69,542.50

2013-08-21      $69,542.50

2013-08-27      $69,542.50

2013-10-15      $69,542.50

2015-04-22      $12,200.00

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $     100,365.00 | $     100,365.00 | $     30,365.00 | $     30,365.00 |

### 3.33.    The Entrust Group/Phillip Wall

The Entrust Group was an investor in the company and made $25,000 in investments in 2011. There has been no evidence that The Entrust Group/Phillip Wall received any falsified information from Mr. Anderson to induce investment.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $     25,000.00 | $     25,000.00 | $     - | $     - |

**3.34.** **The Jones & Royce Revocable Trust**

The Jones and Royce Trust was an investor in the company and made $200,000 in investments in 2012. There has been no evidence that trust received any falsified information from Mr. Anderson to induce investment.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
| --- | --- | --- | --- |
| $      200,000.00 | $      200,000.00 | $                      - | $                      - |

**3.35.** **Theodore Kloth MD/Mary Kloth**

The Kloths made a series of investments in 2014 and 2015 to Imbee. There has been no evidence that the Kloths received any falsified information from Mr. Anderson to induce investment. As a result, the total should not be applied to restitution nor should the funds be applied to the Guideline calculation.

The government and defense have a different opinion as to the funds Mr. Anderson returned to the Koths as the government believes the amount is $6280, and Mr. Anderson documents the total as $14,062.90.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
| --- | --- | --- | --- |
| $      108,337.00 | $      108,337.00 | $                      - | $                      - |

**3.36.** **Thomas A Whalen Jr**

Mr. Whalen began investing in the company in 2010 and continued into 2015 after Mr. Anderson began engaging in fraudulent activity. Mr. Whelan received false documents from Mr. Anderson and statements from Mr. Anderson to encourage his investment. The government writes in their motion that Mr. Anderson conceded the entirety of his investment should count toward repayment. Mr. Anderson only considers those payments made after 2013 to be considered and revises his guideline and loss calculations as shown below.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $    1,008,005.23 | $  1,008,005.23 | $      804,560.10 | $      679,259.19 |

### 3.37.     Vickie Jackson

Aside from the government claims that Imbee was a "sham" company, the government offers no proof that Mr. Anderson engaged in fraudulent representations to encourage investment. As a result, the amount they invested into the company should not be attributed to either the Guideline loss calculation nor the restitution amount.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $       11,886.32 | $     11,886.32 | $              - | $              - |

### 3.38.     Vijay Patel

Vijay Patel made bank document investments in 2013 and 2015. Aside from the government claims that Imbee was a "sham" company, the government offers no proof that Mr. Anderson engaged in fraudulent representations to encourage investment in 2013 with Mr. Patel. As a result, the amount they invested into the company should not be attributed to either the Guideline loss calculation nor the restitution amount.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $      701,135.19 | $    701,135.19 | $      564,735.19 | $      564,735.19 |

### 3.39.     Vikrant Patel

Vikrant Patel an investor in the company and made $61,121 in investments in 2012. There has been no evidence that Vikrant Patel received any falsified information from Mr. Anderson to induce investment. As a result, the investments were done with a non-fraudulent basis and the total should not be applied to restitution nor should the funds be applied to the Guideline calculation.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $       62,121.00 | $     62,121.00 | $              - | $              - |

### 3.40.      Viran Nana/Viren Patel

Viran Patel an investor in the company and made $25,000 in investments in 2011. There has been no evidence that Viran Patel received any falsified information from Mr. Anderson to induce investment. As a result, the investments were done with a non-fraudulent basis and the total should not be applied to restitution nor should the funds be applied to the Guideline calculation.

| Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|
| $       25,000.00 | $       25,000.00 | $             - | $             - |

### 3.41.      Revised Summary Chart

| | Govt: Guidelines Loss | Govt: Restitution | Def: Guidelines Loss | Def: Restitution |
|---|---|---|---|---|
| Ace Home Health Care Hospice Inc./Lorenzo Friar | $       80,000.00 | $       80,000.00 | $       80,000.00 | $       80,000.00 |
| Andy Meyers | $      510,120.00 | $      510,120.00 | $             - | $             - |
| Anil Patel/Wine Country Hospitality | $             - | $             - | $             - | $             - |
| Annant Patel | $      117,198.00 | $      117,198.00 | $       32,248.00 | $       32,248.00 |
| Anthony Zuiker | $      337,850.00 | $      337,850.00 | $      280,637.50 | $      280,637.50 |
| Brenda J Pannell | $       21,650.00 | $       21,650.00 | $             - | $             - |
| Clark Colvis/Linda Colvis | $      300,000.00 | $      300,000.00 | $      300,000.00 | $             - |
| David Grossman/Neil Grossman | $      233,205.83 | $      233,205.83 | $             - | $             - |
| Deborah Pierson | $             - | $             - | $             - | $             - |
| Diane Anderson | $       44,787.52 | $       44,787.52 | $             - | $             - |
| Dilley Design Inc \| Jack and Reanne Dilley | $      222,053.00 | $      222,053.00 | $      166,721.00 | $      166,286.00 |
| Dipak Patel \| Dipak 2007 Living Trust | $       12,000.00 | $       12,000.00 | $             - | $             - |
| Edward/Julia DeLorme | $       37,500.00 | $       37,500.00 | $             - | $             - |
| George Symons | $      472,390.00 | $      472,390.00 | $      472,390.00 | $      124,808.00 |
| Greg Cham | $        2,729.07 | $        2,729.07 | $             - | $             - |
| H + H Assets LLC | $      172,500.00 | $      172,500.00 | $             - | $             - |
| Hawthorn Suites by Wyndham | $       22,900.00 | $       20,900.00 | $        8,100.00 | $        8,100.00 |
| Howard Silverman | $    1,115,802.17 | $    1,115,802.17 | $             - | $             - |
| Kelsey McCann | $       69,804.00 | $       64,803.00 | $       69,804.00 | $       64,803.00 |
| Mark Coleman | $       25,000.00 | $       25,000.00 | $             - | $             - |

| | | | | |
|---|---|---|---|---|
| Michelle Fields | $ - | $ - | $ - | $ - |
| Phillip Darren Buchanon | $ 34,000.00 | $ 34,000.00 | $ - | $ - |
| Rajool Patel | $ 110,000.00 | $ 110,000.00 | $ - | $ - |
| Randy C Renfro/Ocean Front Equity LP \| Capital City Leasing | $ 2,396,094.00 | $ 2,396,094.00 | $ 2,396,094.00 | $ 2,396,094.00 |
| Ray Matheny | $ 17,000.00 | $ 17,000.00 | $ - | $ - |
| Richard Hess | $ 102,860.00 | $ 102,860.00 | $ - | $ - |
| Richard Petzold | $ - | | $ - | $ - |
| Richard Toriggino | $ - | | $ - | $ - |
| Rodney E Maher/Angela Maher \| RE Maher Inc | $ 1,329,073.00 | $ 1,329,073.00 | $ 708,273.11 | $ 685,311.11 |
| RPM001 Intella Capital/Sushil Patel | $ 10,000.00 | $ 10,000.00 | $ - | $ - |
| Samit Channa | $ 106,395.69 | $ 106,395.69 | $ 11,695.69 | $ 11,695.69 |
| Siobhan Delfani/Moe Delfani | $ 100,365.00 | $ 100,365.00 | $ 30,365.00 | $ 30,365.00 |
| The Entrust Group/Phillip Wall | $ 25,000.00 | $ 25,000.00 | $ - | $ - |
| The Jones & Royce Revoc Trust | $ 200,000.00 | $ 200,000.00 | $ - | $ - |
| Theodore Kloth MD/Mary Kloth | $ 108,337.00 | $ 108,337.00 | $ - | $ - |
| Thomas A Whalen Jr | $ 1,008,005.23 | $ 1,008,005.23 | $ 804,560.10 | $ 679,259.19 |
| Vickie Jackson | $ 11,886.32 | $ 11,886.32 | $ - | $ - |
| Vijay Patel | $ 701,135.19 | $ 701,135.19 | $ 564,735.19 | $ 564,735.19 |
| Vikrant Patel | $ 62,121.00 | $ 62,121.00 | $ - | $ - |
| Viran Nana/Viren Patel | $ 25,000.00 | $ 25,000.00 | $ - | $ - |
| | $ 10,144,762.02 | $ 10,137,761.02 | $ 5,925,623.59 | $ 5,124,342.68 |

CONCLUSION

Mr. Anderson requests a term of 36 months and three-years supervised release concurrently on all counts.

Dated:     September 11, 2024                    Respectfully submitted,

                                                JODI LINKER
                                                Federal Public Defender
                                                Northern District of California

                                                          /S
                                                CANDIS MITCHELL
                                                Assistant Federal Public Defender